UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TERRIS HANKS,

                Petitioner,           **REPORT AND RECOMMENDATION**
                                                         **No. 04-CV-6215(DGL)(VEB)**

    -vs-

EKPE D. EKPE,

                Respondent.

_____

## I.    Introduction

Terris Hanks ("Hanks" or "Petitioner") has brought a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction on June 20, 2000, in New York State County Court (Livingston County), following jury trial, of promoting prison contraband in the first degree (N.Y. Penal Law § 205.25(2)). The conviction here at issue stems from Hanks' possession, while a prison inmate, of contraband (*i.e.*, a lid from a tin can) and his threat to use it to harm another inmate. Hanks was sentenced, as a second felony offender, to a prison term of three to six years. Hanks was released to parole supervision on October 10, 2006.

## II.    Jurisdiction

###     A.    "In Custody" Requirement

A petitioner may file a petition for habeas relief only if he is "in custody." *Wheel v. Robinson*, 34 F.3d 60, 63 (2d Cir. 1994) (citing 28 U.S.C. § 2254(a)). However, 28 U.S.C. § 2254(a) requires only that "'the habeas petitioner be "in custody" under the conviction or sentence under attack at the time [the] petition is filed.'" *Id.* (quoting *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (*per curiam*) (holding that person whose sentence has fully expired at time

petition *is filed* is not "in custody" even though collateral consequences flow from prior conviction) (in turn citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)); *accord Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("The District Court's conclusion that Spencer's release from prison caused his petition to be moot because it no longer satisfied the "in custody" requirement of the habeas statute was in error. Spencer was incarcerated by reason of the parole revocation at the time the petition was filed, which is all the "in custody" provision of 28 U.S.C. § 2254 requires."). In the present case, Hanks' detention in prison at the time he filed his habeas petition in the district court satisfied the "in custody" requirement of § 2241. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

    **B.**    **Mootness**

The jurisdiction of the federal courts is restricted to actual "cases or controversies," and will accordingly exist only where the petitioner has "suffered, or [is] threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. at 7 (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 474, 477 (1990)). The Supreme Court explained in *Spencer* that "[a]n incarcerated convict's (or a parolee's) challenge to the validity of his conviction *always* satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." 523 U.S. at 7. At this point in time, Hanks' term of incarceration has expired but his term of parole supervision has not. As *Spencer* clearly holds, the expiration of Hanks' sentence and release to parole supervision does not moot his application for habeas relief and thereby terminate this Court's jurisdiction to hear his case.

**III.**    **Timeliness of the Petition**

The Court received Hanks habeas petition on May 14, 2004. *See* Petition ("Pet.") (Docket No. 1).  Respondent agrees that it is deemed filed on May 4, 2004, the date on which Hanks signed it, pursuant to the "prisoner mailbox rule." Respondent's Memorandum of Law ("Resp't Mem.") at 6 (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)) . Because Hanks' habeas petition was filed after the enactment of the Anti-terrorism and Effective Death Penalty Act ("AEDPA") on April 24, 1996, it is subject to a one-year statute of limitations that runs from the *latest* of the following four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.§ 2244(d)(1)(A) - (D).  For Hanks, like most habeas petitioners, Section 2244(d)(1)(A) sets the applicable starting point for the one-year period of limitations–that is, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review ." 28 U.S.C. § 2244(d)(1)(A).  Petitioner's conviction was unanimously affirmed on direct review by the Appellate Division, Fourth Department, of New York State Supreme Court, on March 15, 2002. *People v. Hanks*, 292 A.D.2d 875, 739 N.Y.S.2d 324 (App. Div. 4th Dept. 2002).

Usually, defendants seek a discretionary appeal to the New York Court of Appeals by filing an application for a certificate for leave to appeal. Under  N.Y.Crim. Proc. Law § 460.10(5)(a), a defendant has thirty (30) days after the Appellate Division affirms his conviction

to seek leave to appeal to the Court of Appeals. Assuming that is denied, defendants then have ninety (90) days from the date of that denial in which to file a petition for a writ of *certiorari* with the Supreme Court seeking further review of the state court conviction. The day on which that ninety-day period expires generally is considered the date that a petitioner's conviction becomes final for purposes of 28 U.S.C. § 2244(d). *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.), *cert. denied*, 534 U.S. 924 (2001); *see also* S. Ct. R. 13(1) (establishing 90-day period for filing petition for writ of *certiorari*). Even where a state prisoner does not seek certiorari, the conviction becomes final no later than the expiration of the ninety-day period for filing such a petition. *See id.*

Hanks, however, did *not* file an application for certificate for leave to appeal with the New York Court of Appeals even though appellate counsel informed him, by means of a letter dated March 18, 2002, of the affirmance by the Appellate Division and Hanks' right to seek discretionary review from the New York Court of Appeals. Resp't Mem. at 4 (citing Resp't Ex. I) (Docket No. 13-1). Although generally a habeas petitioner's "conviction bec[omes] final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expire[s]," *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (internal quotation and citation omitted), Hanks' failure to further pursue his direct appeal by seeking leave to appeal to New York Court of Appeals foreclosed the possibility of such review. This is because Hanks failed to present his claims to the "highest court of a State in which a decision could be had," *i.e.*, the New York Court of Appeals, rendering review of his conviction by the United States Supreme Court unavailable. 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of *certiorari* . . . ."); *see also Sandquist v. California*, 419 U.S. 1066

(1974) (dismissing petitions for writs of *certiorar*i for lack of jurisdiction where claims had not been presented to highest state court capable of rendering judgment); 16B Charles Alan Wright, *et al.* Federal Practice and Procedure § 4007 (2d ed. 1996) ("Supreme Court jurisdiction to review state-court judgments [is] limited to judgments of the highest court of the state in which decision could be had") (cited in *Anzeulotto v. Reish*, 2001 WL 739245, *3 n. 1 (E.D.N.Y. 2001) (holding that petitioner's failure to pursue a direct appeal foreclosed the possibility of review on a petition for *certiorari* by the Supreme Court)). In the instant case, Hanks received notice that his appeal was rejected by the Appellate Division on March 15, 2002. After he allowed thirty (30) days to pass without seeking leave to appeal to New York Court of Appeals, his conviction became final on April 14, 2002. *See* N.Y. Crim. P. § 460.10(5)(a). *Accord Williams v. Phillips*, 2005 WL 1072711, *6 (E.D.N.Y. Apr. 29, 2005) (citing N.Y. Crim. Proc. Law § 460.10(5)(a)); *Crawford v. Costello*, 27 Fed. Appx. 57, 59, 2001 WL 1485838, at *1 (2d Cir. 2001) (unpublished opn.). Respondent agrees with this proposition. *See* Resp't Mem. at 10 (Docket No. 13-1).

Where, as is the case with AEDPA, "a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period." *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998) (citing Fed.R.Civ.P. 6(a); *Day v. Morgenthau*, 909 F.2d 75, 79 (2d Cir. 1990)). As Respondent points out, Hanks had one year from April 14, 2002–that is, until April 14, 2003–in which to file his federal petition for a writ of habeas corpus. As noted above, Hanks did not file his petition until May 4, 2004, more than one year after the expiration of the limitations period. AEDPA, however, contains a tolling provision which directs that any period during which review of a judgment is taking place in *state court* is not counted toward the one-year filing limit. *See* 28 U.S.C. § 2244(d)(2). Specifically, § 2244(d)(2) provides that "[t]he

time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Thus, the Court must take into account any tolling occasioned by Hanks' filing of applications for review of his conviction in state court.

As respondent notes, Hanks filed his first application with the Appellate Division for writ of error *coram nobis* challenging appellate counsel's effectiveness on March 14, 2003. This was 334 days after AEDPA's one-year limitations period began to run. The period was tolled for 188 days during the pendency of that *coram nobis* application, which ended on September 18, 2003, when the New York Court of Appeals denied leave to appeal the denial of the Appellate Division's dismissal of the application. Resp't Mem. at 11 (Docket No. 13-1); Petitioner's Timeliness Response ("Pet'r Resp.") (Docket No. 3); *see also People v. Hanks*, 100 N.Y.2d 621, 767 N.Y.S.2d 404 (App. Div. 4th Dept. 2003).  When the one-year limitations clock began running again on September 18, 2003, Hanks only had 31 days remaining in which to file his petition in order to be timely, as he had already used 334 days of the period.  Thirty-one (31) days from September 18, 2003, was October 19, 2003, a Sunday.  Petitioner's new deadline for filing therefore was the next business day, October 20, 2003.

In order to have been timely, then, Hanks needed to file his federal habeas corpus petition or file another state court collateral motion on or before October 20, 2003. Hanks filed nothing in state court until November 26, 2003, when he filed a second application for a writ of error *coram nobis*. The filing of this *coram nobis* application did *not* have the effect of restarting the expired one-year limitations period. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("We therefore hold that proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the

one-year statute of limitations begins to run."). Hanks did not file his federal habeas corpus petition until May 4, 2004. Hanks's petition clearly is untimely since it was filed well after the statute of limitations period expired.

Hanks contends, however, that he is entitled to "equitable tolling" until November 12, 2002, the date on which he claims to have realized that appellate counsel had not filed a leave application with the New York Court of Appeals. *See* Pet'r Mem. at 5 (Docket No. 15); *see also* Resp't Mem. at 11 (Docket No. 13-1) (citing Resp't Ex. Y at 3-4). Hanks states that he was unable to file his federal habeas petition on time because he was awaiting a decision on the leave application that he reasonably believed that his appellate counsel had filed with the New York Court of Appeals. *See* Pet'r Mem. at 5 (Docket No. 15).

Because AEDPA's "one-year period is a statute of limitations rather than a jurisdictional bar," under certain circumstances, it may be subject to equitable tolling. *See*, *e.g.*, *Smith v. McGinnis*, 208 F.3d at 17. However, it is only in "'rare and exceptional circumstances'" that AEDPA's limitations period may be subject to equitable tolling. *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (quoting *Smith*, 208 F.3d at 17)). Equitable tolling of the one-year limitations period is available "when 'extraordinary circumstances' prevent a prisoner from filing a timely habeas petition." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir.), *cert. denied*, 531 U.S. 968 (2000). The Second Circuit has explained, however, that the party seeking equitable tolling also "'must have acted with reasonable diligence *throughout the period he seeks to toll*.' " *Warren v. Garvin*, 219 F.3d at 113 (quoting *Smith v. McGinnis*, 208 F.3d at 17) (emphasis supplied). The reviewing court also must consider not only whether the circumstances at issue prevented petitioner from filing for some period of time, but also whether they prevented him filing on time–in other words, there must be a "link of causation" between the extraordinary circumstances

and the delay in filing. *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

The Court agrees with respondent that Hanks has not identified an "extraordinary circumstance" that should toll AEDPA's statute of limitations. The "extraordinary circumstances" referred to in the equitable tolling jurisprudence encompass events which were "beyond [petitioner's] control" and which prevented successful filing during one-year time period. *Smaldone v. Senkowski*, 273 F.3d 133, (2d Cir.) (citing *Smith v. McGinnis*, 208 F.3d at 17; *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)). The Court notes that the Second Circuit, in keeping with other circuit courts, has found attorney error inadequate to create the "extraordinary" circumstances equitable tolling requires. *Id.* (citing *Geraci v. Senkowski*, 211 F.3d 6, 9 (2d Cir. 2000) (finding that attorney's misunderstanding of the period for which a claim remained "pending" did not warrant equitable tolling); *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) (stating that "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling"); *Taliani v. Chrans*, 189 F.3d 597, 598 (stating that "a lawyer's mistake is not a valid basis for equitable tolling"); *Sandvik v. United States*, 177 F.3d at 1270 (stating that "mere attorney negligence . . . is not a basis for equitable tolling").

Hanks contends that he did not file his habeas petition on time because he was awaiting a decision on the leave application that he claims appellate counsel told him that he (appellate counsel) had filed with the New York Court of Appeals. Hanks reached this conclusion based on the following, very brief, correspondence from appellate counsel:

> Enclosed is a copy of the Appellate Court's decision.
> *You* may succeed in obtaining permission from the Court of Appeals to appeal the Appellate Division judgment of affirmance.

Letter dated March 18, 2002, from Attorney Schoenwald to Petitioner (Resp't Ex. I) (emphasis

supplied). According to Hanks, based on the above-referenced correspondence received from appellate counsel, he "deems it objectively reasonable to have concluded from the relevant letter, appellate counsel had on his own accord perfected the leave to appeal application . . . ." Pet'r Mem. at 5 (Docket No. 15). The Court disagrees. As Respondent argues, based on the above-quoted letter, Hanks did not have a reasonable basis for believing that his attorney had filed a leave application. Resp't Mem. at 12 (Docket No. 13-1). Appellate counsel certainly did not affirmatively represent that fact, so to the extent that Hanks may have misunderstood the letter, such a mistake was his. *Cf. Rodriguez v. People of the State of N.Y.*, 2003 WL 289598, *18 (S.D.N.Y. Feb. 11, 2003)) (rejecting petitioner's claim of equitable tolling; noting that "[i]mportantly, this is not a case where counsel informed Rodriguez that he did not have to file an application for counsel or IFP status (or where counsel misled the defendant into believing counsel filed the documents for him") (citing *Restrepo v. Kelly*, 178 F.3d 634, 636, 640 (2d Cir. 1999) (counsel failed to file a notice of appeal despite express instructions from petitioner and repeatedly and "falsely assured" petitioner "that the appeal had in fact been filed" and "was in progress" when it was not; proof of such assertions sufficed to establish that counsel was ineffective and therefore "cause" existed to excuse a procedurally defaulted claim)).

The Second Circuit has recognized "only a limited number of circumstances that may merit equitable tolling." *Doe v. Menefee*, 391 F.3d at 160. Even assuming that appellate counsel's failure to file a leave application regarding a discretionary appeal in state court was attorney error, similar attorney conduct has not been identified as being an "extraordinary circumstance" sufficient to qualify for equitable tolling. *Compare with Baldayaque v. United States*, 338 F.3d 145 (2d Cir. 2003) (granting equitable tolling where petitioner's attorney incorrectly informed him that the time to file his federal habeas petition had expired); *Valverde v. Stinson*, 224 F.3d at

133-34 (granting equitable tolling where prison officials intentionally obstructed petitioner's ability to file his habeas petition by confiscating his legal papers). Furthermore, Hanks has not established a "link of causation" between the alleged "attorney error" and the period sought to be tolled so as to show that the circumstance was an "extraordinary" one making it impossible for him to file his habeas petition on time. *See Raynor v. Dufrain*, 28 F. Supp.2d 896, 900 (S.D.N.Y. 1998) ("Because petitioner alleges that his attorney's failure to file a notice of appeal constituted ineffective assistance of counsel, there is some suggestion that this court might equitably toll the statute of limitations for the time in which petitioner was attempting to file a late notice of appeal. . . . However, we do not believe, even if this allegation is true, that such failure constituted "extraordinary" or "rare and exceptional" circumstances, making it "impossible to file his petition on time.") (quoting *Davis*, 158 F.3d at 810-11; *Calderon*, 128 F.3d at 1288 and citing *Henderson v. Johnson*, 1 F. Supp.2d. 650, 654 (N.D. Tex. 1998)).

Tolling is not automatic upon a showing of extraordinary circumstances. "[T]he party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis*, 208 F.3d at 17. To make this showing, a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." *Valverde*, 224 F.3d at 134. Even assuming *arguendo* that appellate counsel's letter cited above misled Hanks about whether a leave application had been filed, and such a representation could amount to an "extraordinary circumstance," Hanks still is not entitled to equitable tolling because he was not reasonably diligent in filing his habeas petition. Resp't Mem. at 13 (Docket No. 13-1) (citing *Valverde*, 224 F.3d at 134 ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the

extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.").

Respondent points out that although Hanks states that he made "numerous attempts" to contact appellate counsel about the supposedly pending leave application, Hanks did not contact the New York Court of Appeals to inquire as to the status of his appeal or request an extension of time to file a leave application. Resp't Mem. at 14 (Docket No. 13-1). Because Hanks "certainly could have inquired about the status of his appeal" between March 2002 and November 2002, the time he wishes to have tolled, he "cannot use his own lack of diligence to toll the statute of limitations." *Warren v. Kelly*, 207 F. Supp.2d 6, 11 (E.D.N.Y. 2002) (where petitioner claimed that he could not file a timely habeas petition because he allegedly did not know about the disposition of his state court appeal, and appellate court denied leave to appeal over one year before the federal petition was drafted, petitioner could have inquired about the status of his appeal during that time and could not use his lack of diligence for equitable tolling purpose).

A further lack of diligence is seen in Hanks' pursuit of his claims in state court for exhaustion purposes. Again, the Court assumes for the sake of argument that he could not have filed his habeas petition prior to the date that claims to have discovered, which was on or about November 12, 2002, that counsel did not file a leave application. Hanks' petition raises two claims: that he was denied his constitutional rights by being required to wear a "stun belt" during trial and that appellate counsel was ineffective because he failed to raise meritorious arguments on direct appeal and filed an "unlawyer-like" brief on direct appeal. *See* Amended Petition (Docket No. 5); *see also* Resp't Mem. at 6 (Docket No. 13-1). However, Hanks did not raise the "stun belt" claim until he filed a C.P.L. § 440.10 motion on December 9, 2003, more than three years after he was convicted, and a year after he found out in November 2002 that appellate

counsel had not sought leave to appeal. Hanks was aware of the "stun belt" claim at trial and could have raised it immediately following his conviction, but unjustifiably failed to do so.

Moreover, Hanks' present claim of ineffective assistance of appellate counsel stems from the alleged deficiencies in the brief filed on direct appeal–a fact of which Hanks was aware at the time his direct appeal was pending. Under New York law, Hanks was required to exhaust those claims by means of a *coram nobis* application, a vehicle for collateral review of a conviction. Hanks did not need to wait until his direct review was completed before filing such an application. However, Hanks did not challenge appellate counsel's performance until March 2003, four months after he found out that counsel failed to file a leave application with New York's highest appellate court, and a year after he found out that his conviction had been affirmed on direct review by the intermediate appellate court. Resp't Mem. at 14 (citing Resp't Ex. F, Petitioner's *Pro Se* "Appellant Brief"). Once the first *coram nobis* application was dismissed, Hanks could have asserted these ineffective assistance of appellate counsel claims in a federal habeas petition, as they were exhausted at this point. However, Hanks waited another two months and filed a second *coram nobis* application raising substantially the same claims, which likewise was denied. Resp't Mem. at 14 (citing Resp't Ex. K and Ex. O). Hanks has presented no explanation for the lengthy delay of nearly two years that occurred between the alleged "extraordinary circumstance" in November 2002 and the filing of his federal habeas petition in May 4, 2004, which appears to raise the same claims raised in the first *coram nobis* application. *See Warren*, 207 F. Supp.2d at 10 ("Even assuming that the Petitioner filed his petition on the earlier date in November, he waited over three months from the time his papers were allegedly confiscated before filing the instant habeas petition. The Petitioner has presented no explanation for the lengthy delays after the alleged confiscation.").

The Court accordingly recommends that equitable tolling should not be applied in this case as the record does not reflect the existence of some event which effectively prohibited Hanks from pursuing his habeas petition in a timely fashion. As discussed above, Hanks should not be entitled to equitable tolling because appellate counsel's failure to file a leave application was not an "extraordinary circumstance" that made it impossible to pursue habeas relief and, even if it were, Hanks failed to act diligently subsequent to discovering the alleged circumstance. *See Raynor v. Dufrain*, 28 F. Supp.2d at 900 (rejecting claim of equitable tolling because "even if petitioner's attorney failed to file a notice of appeal in the instant case, this failure had no bearing on his actual ability to pursue habeas relief") (citing *Mandarino v. United States*, Nos. 98 Civ. 590(LBS) & 91 Crim. 868 (LBS), 1998 WL 729703 (S.D.N.Y. Oct. 16, 1998) (attorney's failure to provide his client with notice of denial of certiorari by the Supreme Court did not constitute grounds for equitable tolling)).

**IV.     Conclusion**

For the foregoing reasons, the Court recommends that Respondent's motion to dismiss the petition on the basis that it is untimely and that Petitioner does not qualify for equitable tolling be **GRANTED** and that the petition be **DISMISSED** with prejudice. Furthermore, the Court finds that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). Therefore, the Court recommends that no Certificate of Appealability should issue with respect to any of Petitioner's claims.

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:  September 13, 2007
        Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

---

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: Rochester, New York
September 13, 2007.